IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA

v.                                        No. 4:02CR00128 JLH
                                          [No. 4:07CV00334 JLH]
MARY EDELMANN

## MEMORANDUM OPINION AND ORDER

### I.   PROCEDURAL BACKGROUND

On June 28, 2004, the jury returned verdicts finding defendant Mary Edelmann ("Edelmann") guilty of two counts of mail fraud (Counts I and II), two counts of wire fraud (Counts III and IV) and one count of illegal monetary transaction of property (Count V) as alleged in the March 17, 2004 second superseding indictment. Documents #145-149. In addition, the jury returned verdicts against Edelmann as to all four forfeiture allegations contained in the second superseding indictment. Documents #150-153.

Edelmann was sentenced on July 15, 2005, to 92 months imprisonment on each of the five counts to run concurrent to each other and to be followed by supervised release for a term of three years, a special assessment in the amount of $500.00, and restitution in the amount of $209,980.83 to be paid to Thomas Richardson and in the amount of $750.00 to be paid to the United States Probation Office. The judgment was filed and entered on the docket on July 20, 2005. Document #237. On September 15, 2005, the judgment was amended, pursuant to Fed. R. Crim. P. Rule 36, to incorporate the July 13, 2004 preliminary and October 22, 2004 final orders of forfeiture. Document #263.

Edelmann, through counsel, appealed "arguing that (1) the district court erred in refusing to suppress her incriminating statements; (2) the district court erred by removing her counsel of choice;

(3) the district court erred by denying her request to proceed *pro se*; (4) the district court erred in allowing the government to introduce character evidence; (5) the evidence is insufficient to sustain her convictions on each of the five counts; (6) the district court erred in admitting Bureau of Prison records to prove a prior conviction; (7) the district court was without authority to amend the judgment to include a missing forfeiture award; and (8) the district court committed errors in calculating her offense level and criminal history, resulting in an unreasonable sentence." *United States v. Edelmann*, 458 F.3d 791, 799 (8th Cir. 2006).   The Eighth Circuit Court of Appeals affirmed. *Id.* Rehearing and rehearing *en banc* were denied on September 27, 2006.

## II.   PENDING MOTIONS

On April 4, 2007, Edelmann filed a *pro se* motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the sentence.[1]   Document #311.   The motion is supported by a brief consisting of three volumes totaling 467 pages and a separate volume of exhibits.   Document #312.   She raises thirty-nine grounds for relief: Issue 1 – improper institution of civil forfeiture proceeding to further purported criminal investigation; Issue 2 – improper use of grand jury subpoenas and misconduct before the grand jury; Issue 3 – denial of due process by pre-indictment delay; Issue 4 – interference with right to retained counsel of choice and violation of the attorney-client privilege and attorney work-product doctrine; Issue 5 – double jeopardy by the criminal trial after the "agreement" and civil forfeiture; Issue 6 – entrapment and entrapment by estoppel; Issue 7 – government misconduct in violation of *Brady*, *Giglio*, and the Jencks Act; Issue 8 – refusal of the government to produce original documents; Issue 9 – invalid superseding indictments, denial of Fifth Amendment right, and lack of jurisdiction; Issue 10 – elements of offenses are not alleged in the indictment, constructive

---

[1] The Honorable George Howard, Jr., died on April 21, 2007.  The case was reassigned to the undersigned on April 27, 2007.

amendment of indictment, and deprivation of Fifth Amendment right; Issue 11 – denial of Sixth Amendment right to conflict-free counsel; Issues 12-18 – presentation of false testimony/fabricated evidence; Issue 19 – insufficient evidence to support convictions; Issue 20 – willful misrepresentations to jury during closing argument; Issue 21 – improper and defective jury instructions and denial of Sixth Amendment right; Issue 22 – counsel was ineffective in refusing to request Court to poll jurors; Issue 23 – Court did not provide any instructions to the jury for the offense of aiding and abetting; Issues 24-28 – willful misuse of forfeiture statutes, misrepresentation to the jury and the Court, and improper jury instructions regarding the forfeiture allegations; Issues 29-30 – erroneous preliminary order of forfeiture and final judgment; Issue 31 – improper and unconstitutional sentence; Issue 32 – improper restitution order; Issue 33 – unconstitutional delay in sentencing; Issues 34-38 – misconduct before the Eighth Circuit Court of Appeals and vindictive prosecution; and Issue 39 – actual improprieties and appearance of improprieties.

The government filed a response on June 1, 2007.  Document #321.  The government counters that Edelmann's motion contains "very little in the way of fact to support her contentions" and is mainly just accusations and innuendo.  The government also argues that the majority of her claims are procedurally barred and that the substantive claims should be denied as having no legal merit, are not fact based, and have previously been disposed of by the appellate court.

Edelmann filed a 131-page reply with exhibits on June 22 and a supplemental reply with an exhibit on August 6.  Documents #325, 328.  On October 16, Edelmann filed two more supplemental replies.  Documents #329-330.

Edelmann also filed a *pro se* motion for discovery on April 11 which she supplemented on May 22.  Documents #313, 319.  Besides renewing her November 8, 2006, January 19, and

February 9 motions for production that were denied, Edelmann seeks *Brady*, *Giglio*, and Jencks Act

materials;  grand jury transcripts and the rough/field notes of FBI Special Agents Michael Patkus and

Sharon Dawkins as well as copies of all grand jury subpoenas issued by the government for this case

and for the *in rem* forfeiture action, *United States v. Lot 51 Palisades Heights*, 4:01CV00525 JMM

(E.D. Ark. 2004).

The government responded on May 31.   Document #320.   It argues that Edelmann's

discovery motions are a rehash of similar motions; she and her counsel have been provided with

access to the discovery, *Brady*, *Giglio*, and Jencks materials; she has not shown a particularized need

for grand jury transcripts; and the notes of the agents are not discoverable.   On June 22, Edelmann

filed a reply.   Document #327.   She counters that the government never provided the materials that

were the subject of her pre-trial motions; she is entitled to agents' notes, grand jury transcripts and

subpoenas; she needs to inspect the original and authenticated documents to refute fabricated

documents including those presented by Richardson at sentencing; and she needs to know where

AUSA Anne Gardner is licensed and the bar numbers so she can file complaints against her.

## III.   FACTUAL SUMMARY

The Eighth Circuit provided the following factual summary of the mail and wire fraud

counts:

> Edelmann's first mail fraud count stemmed from misrepresentations made to a
> potential business lender.   In January 2001, Edelmann, owner and operator of a
> paralegal service company in Maumelle, Arkansas, contacted Theodore Powell
> seeking venture capital for her company.   Powell referred her to Eleanor Vaughn in
> Arizona.   After receiving Edelmann's project proposal and company prospectus,
> Vaughn relayed the documents to Victor Beard. Beard communicated to Edelmann,
> through Vaughn, that he required additional documentation before he would loan
> $50,000 to Edelmann.   Shortly thereafter, Edelmann sent the documents Beard
> requested to Vaughn, who subsequently hand-delivered the documents to Beard.
> Beard's review of the documents made him suspect Edelmann's company did not

actually have access to the more than $2,000,000, as represented by the documents. As a result, Beard requested a letter from Edelmann's bank showing that the $2,000,000 was secured and accessible to Edelmann. Edelmann responded by faxing Beard a letter purportedly from Bank of America. Beard recognized the letter as fraudulent. A subsequent investigation of the financial statements and tax returns forwarded to Beard by Edelmann revealed that they were not genuine.

Edelmann's second mail fraud count was based upon her actions in connection with an application for a home loan. In March 2001, Edelmann applied for a loan through Lexxel Funding, an Internet loan broker, submitting purported bank statements and wage and earnings forms. Lexxel then sought funding from BNC Mortgage ("BNC") to fund the loan. BNC agreed to loan Edelmann $125,000 to purchase a $225,000 home in Maumelle, Arkansas. Edelmann was required to bring $102,825.08 to closing as a down payment on the property.

Edelmann's first wire fraud count was based on actions she took before closing on her house. Before closing, Edelmann responded to Thomas Richardson's newspaper ad in which Richardson stated that he was interested in purchasing property for cash. Edelmann told Richardson that she expected to obtain a substantial amount of money from an overseas investment soon and needed a short-term loan for "operating cash" for her company's expenses. She promised Richardson a 100 percent return on his money within 30 days. She falsely represented to Richardson that she was an attorney and that she would ensure that all documents were legally sufficient. She provided Richardson with false financial documents similar to those she previously provided to Beard, including a false Bank of America letter showing that she had $10,000,000 in a guaranteed, but frozen, account. Based on these documents, Richardson agreed to lend Edelmann $250,000 and drew up a promissory note and guarantee for their signatures. Richardson then arranged for $147,174.92 to be wired from his Charles Schwab ("Schwab") investment account into Edelmann's account at Superior Federal Bank; in addition, he arranged for $102,825.08 to be presented to Edelmann in the form of a Schwab check. Edelmann negotiated the check and had a cashier's check in that amount made payable to Standard Abstract and Title Company. She then took the check to Standard Abstract and Title Company and used it to close on the loan from BNC. She used the money wired to her account to buy furniture and equipment for her business.

Edelmann's second wire fraud count stems from her conduct in April 2001. At that time, Edelmann offered Richardson a job overseeing foreign investment projects. Richardson and Edelmann entered an employment contract in which Edelmann agreed to pay him a salary of $240,000 annually. Subsequently, Edelmann asked Richardson to loan her an additional $50,000, explaining that because the anticipated return on her overseas investment was delayed, she needed additional operating capital. She agreed to pay Richardson 100 percent on this additional amount, or a return of $100,000. Relying on information provided for the first loan, as well as

documentation of the anticipated return on the overseas investment, Richardson had $50,000 from his Schwab investment account wired to Edelmann's Internet bank account.

When the 30-day time frame for repayment had passed, Richardson requested that Edelmann pay on the promissory note. Edelmann, however, failed to do so and terminated Richardson's employment. Richardson sought to enforce the guarantee agreement by pursuing the $10,000,000 in "guaranteed funds" Edelmann claimed to have at Bank of America. When he presented his documentation to Bank of America, he was advised that Edelmann had no such account and that she had defrauded him. Bank of America representatives then contacted the Federal Bureau of Investigation (FBI) about the fraud, and the FBI began investigating Edelmann.

*Edelmann*, 458 F.3d at 799-800.

Count V, the illegal monetary transaction of property count, was the consequence of the scheme alleged in Count III, the first wire fraud count, by which Edelmann used the $102,825.08 check written by Richardson to purchase a cashier's check which was then used to purchase the home in Maumelle.

## IV.   ANALYSIS

Within the thirty-nine headings of issues, Edelmann has raised a multitude of sub-parts which overlap and repeat arguments made in other portions of the brief. Thus, the fact that an argument is not addressed each time it is asserted under a different heading does not mean that the argument has not been considered.

<u>Issues 1 and 5 – Improper Institution of Civil Forfeiture Proceeding to Further Purported Criminal Investigation and Collateral Estoppel and Double Jeopardy by the Criminal Trial after the "Agreement" and Civil Forfeiture</u>

Edelmann argues that the unverified civil forfeiture proceedings instituted on August 14, 2001, were used by AUSA Dan Stripling as a means to initiate communications with her to further a criminal investigation as a result of her not heeding threats by the United States Attorney's office to terminate her litigation support firm which provided services to indigent prisoners some of whom

6

had been convicted in the Eastern District of Arkansas.  She provides her timeline of events which occurred after the filing of the civil forfeiture complaint through her meetings with Stripling and Dawkins and her belief that a deal had been worked out allowing just her business property to be seized only to have an eight-count indictment returned against her.  Edelmann contends that Stripling and AUSA George Vena manipulated and misled the Court into finding that there was no plea agreement, an erroneous finding that was affirmed by the Eight Circuit.  She then recounts her association with Richardson, including having him arrested, although Stripling had the charges dismissed and the criminal record expunged and sealed.

Edelmann further argues that Stripling fabricated allegations in the unverified civil forfeiture complaint in hopes of finding probable cause.  She asserts that courts have recognized that civil forfeiture proceedings are "quasi-criminal" in nature and are entitled to certain of the procedural rights afforded to criminal defendants such as the exclusionary rule.  In addition, Edelmann alleges that the conduct engaged in by the AUSAs was prosecutorial misconduct, that her counsel was ineffective in failing to present arguments at the October 2002 suppression hearing that the evidence lawfully or unlawfully obtained through the civil forfeiture proceeding should have been suppressed under the exclusionary rule, and that she did have a right to counsel prior to the indictment due to the unlawfully instituted civil forfeiture proceedings.

As to Issue 5, Edelmann again relates her account of the events that the government initiated contact with her former attorney regarding the civil forfeiture of her home, the activities of Richardson, the plea bargain,[2] the "fishing expedition" including the civil forfeiture to acquire

---

[2] Edelmann states that she will refer to it as a plea bargain while acknowledging that the Court has ruled that no such agreement existed.  She contends that the Court might have made a different finding if all the facts had accurately been presented.

evidence to present to the grand jury, the issuance of numerous improper grand jury subpoenas, and the closure of her business and removal of its property pursuant to the plea bargain. She contends that the basis for the civil forfeiture warrant and the administrative forfeiture letter was the same allegations and purported transactions in the criminal case as to Richardson. Edelmann asserts that the actions of the government regarding the seizure of her business assets and the civil forfeiture proceeding warrant application of both collateral estoppel and double jeopardy.

The government responds that Edelmann's argument about the events surrounding a "deal" with the government was already litigated on appeal and so is now barred from further consideration. It also points to the Eighth Circuit's ruling in *United States v. Jones*, 111 F.3d 597 (8th Cir. 1997), as demonstrating why Edelmann's argument as to double jeopardy is without merit. "Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001) (citation omitted); *see also United States v. Davis*, 406 F.3d 505 (8th Cir. 2005).

In her reply, Edelmann contends that the government has continued to lie, confuse and mislead the Court. She argues that the issue of whether there was a cooperation agreement that should be enforced has not been raised and so has not been decided. Furthermore, Edelmann, in the October 16th supplement to her reply, points to the affidavit prepared by Dawkins in *Edelmann v. United States*, 4:07CV00633 JLH, that shows that there was a deal with the government in 2001 involving her business property and she was cooperating with the government pursuant to that agreement. *Edelmann*, No. 4:02CR00128, Def.'s Reply at 1-2.

Edelmann's argument as to the improper institution of the civil forfeiture proceedings and the issue as to whether there was a plea agreement are barred. Although Edelmann attempts to avoid

the operation of such a bar by couching her argument as a cooperation agreement or an implied contract, the fact remains that the issue of the events prior to indictment was decided on appeal.

The Court also agrees with the government that the appellate court's opinion in *Jones* explains why there is no merit to Edelmann's assertions of collateral estoppel and double jeopardy.

> Appellants contend that their convictions constituted double jeopardy in light of earlier civil forfeiture proceedings instituted against them that were stayed pending their criminal prosecutions. The Supreme Court recently held in *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996), that civil forfeiture proceedings are not, absent extraordinary circumstances, punitive, and do not raise double jeopardy concerns. Only "where the 'clearest proof' indicates that an in rem civil forfeiture is 'so punitive either in purpose or effect' as to be equivalent to a criminal proceeding, [might] that forfeiture . . . be subject to the Double Jeopardy Clause."
>
> In support of their argument that the civil proceedings were punitive, appellants contend that the government instituted civil forfeiture proceedings as preparation for eventual criminal forfeitures. Appellants allege that the stay of the civil forfeiture proceedings which the government obtained in light of the criminal proceedings shows that the civil forfeiture proceedings were in fact an integral part of the criminal proceedings and were therefore punitive.
>
> This argument defeats itself on two fronts. First, the fact of the stay undermines rather than supports the double jeopardy challenge, for a stay of forfeiture proceedings prevents the attachment of jeopardy. Second, appellants' argument that the civil forfeiture proceedings were related to the criminal proceedings defeats their double jeopardy claims. A single coordinated prosecution involving both civil forfeiture proceedings and criminal proceedings does not violate the double jeopardy clause, as the civil and criminal proceedings in such a situation are "merely different aspects of a single prosecution." In this case, the temporal link and the coordination between the civil forfeiture proceedings and the indictments satisfy us that the actions were different aspects of the same prosecution and that the civil forfeiture proceedings were not separate and punitive. Because both the stay and the coordination between the civil forfeiture proceedings and criminal prosecutions prevented jeopardy from attaching as a result of the civil forfeiture proceedings, the subsequent criminal proceedings would not, even before *Ursery*, have constituted double jeopardy.

*Jones*, 111 F.3d at 599-600 (citations and footnote omitted); *see also United States v. Real Property In Section 9, Town 29 North, Range 1 West, Tp. of Charlton, Otsego County, Mich.*, 308 F. Supp.

2d 791, 809 (E.D. Mich. 2004).

The arguments as to ineffective assistance of counsel and prosecutorial misconduct as to this issue and the remaining issues will be addressed later in this opinion.

Issue 2 – Improper Use of Grand Jury Subpoenas and Misconduct before the Grand Jury by Federal Prosecutors

Edelmann argues that the government improperly issued grand jury subpoenas as a fishing expedition and  to improperly interview witnesses in the FBI and United States Attorney's offices in violation of Fed. R. Crim. P. Rule 17(a).  She accuses the government of lying, presenting false testimony and fabricated evidence to the grand jury, and coercing witnesses.  Edelmann contends that her counsel was ineffective in failing to raise the misuse of the grand jury subpoenas to conduct meetings and interviews with witnesses prior to trial and such misuse was prosecutorial misconduct.

The government responds that it is permissible to have access to evidence and witnesses prior to presentation before the grand jury.  It also asserts that Edelmann has waived any objection by failing to move to suppress such evidence prior to trial.  The government further states that there is an exception under the Right to Financial Privacy Act ("RFPA") for grand jury subpoena of information.

Edelmann has replied that subpoenas were used to force unwilling individuals to be interrogated and threatened including during a time when there was not even a grand jury investigation ongoing.  She contends that some copies of subpoenas she obtained were stolen during the search of her attorney's office.  Edelmann states she is aware that grand jury subpoenas are not subject to the RFPA, but other type of subpoenas were served upon various financial institutions without compliance with the RFPA.

Prior to trial Edelmann raised these issues several times such as the motion/renewed motion

and brief[3] that alleged misuse of grand jury subpoenas and process.  She argued that the grand jury subpoena process was used without probable cause as a "fishing expedition," and by directing the individuals and entities to directly contact the AUSA or FBI even when there was no ongoing grand jury investigation.  The Court, by order filed on March 26, 2004,[4] found this argument to be without merit and noted that she would "be free to raise such issues, if still appropriate, at trial."

The Court finds that circumstances have not changed since the Court last found this argument to be without merit.

Issue 3 – Pre-Indictment Delay Was Deliberate Device to Prejudice Defendant and
Deprive Her of  Due Process

Edelmann contends that the government delayed between the filing of the civil forfeiture complaint and the filing of the indictment to prevent her from contesting the forfeiture of her property and prejudicing her right to locate certain witnesses.  She also asserts that while her counsel did raise this issue in a motion to dismiss prior to trial, the Court made no findings on this issue and stated that she could raise any unaddressed issues at trial; therefore, her counsel was ineffective in failing to raise  the issue at trial.

The government counters that to warrant dismissal the delay must be both unreasonable and substantially prejudice the defendant in the presentation of her case, specifically identifying witnesses and documents which were lost in the delay.  It notes that Edelmann has not declared who the witnesses are and has merely speculated as to possible prejudice.  The government states that her counsel did object to delay in a motion to dismiss but that the Court denied that issue in the order of March 26, 2004.

---

[3] Documents #52, #53.

[4] Document #122.

In her reply, Edelmann argues that the delay was prejudicial as her business was seized without objection because she believed that a deal was in place; the delay allowed the government to steal her trial preparations and exhibits before trial; and she was unable to locate nine individuals after the lengthy pre-indictment delay.

Fed. R. Crim. P. Rule 48(b) states that "[i]f there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

The Eighth Circuit analyzed pre-indictment delay in *United States v. Skinner*, 433 F.3d 613 (8th Cir. 2006):

> "The Due Process Clause of the Fifth Amendment protects a criminal defendant against unreasonable pre-indictment delay."  In order to show that his due process rights were violated, Skinner must establish that (1) the delay resulted in actual and substantial prejudice to the presentation of his defense and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him.  "Alleged prejudice is insufficient to establish a due process violation if it is 'insubstantial, speculative or premature.'"  Skinner must show that he has been actually and substantially prejudiced by the delay, and the court will inquire into the reasons for delay only where actual prejudice has been established.  "To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government . . . it is the defendant's burden to show that the lost testimony or information is not available through other means."

> Based upon our review of the record, we hold Skinner failed to establish that he was actually prejudiced as a result of any pre-indictment delay.  In fact, Skinner has presented no evidence that his defense strategy would have been different if he had been indicted sooner or that any evidence became unavailable because of the time lapse.  Moreover, Skinner states no factual basis for his claim that the state and federal authorities colluded with the purpose of denying him a constitutional right.  The record in this case is devoid of any evidence that the government intentionally delayed seeking an indictment to gain any tactical advantage, but conversely, the record shows that the government sought an indictment when it completed its investigation.  As Skinner has not demonstrated any actual or substantial prejudice to his defense, his Fifth Amendment pre-indictment delay claim fails.

*Id*. at 616-17 (citations omitted).

Edelmann raised the issue of prejudicial pre-indictment delay in a motion to dismiss.[5] The Court, by order filed on March 26, 2004, found her argument to be without merit and was "basically revisiting contentions regarding the investigation and ultimate indictment process that were the subject of the January 14, 2003 order."

The January 14, 2003 order[6] recounts the findings of the Court regarding pre-indictment contacts between Edelmann and the government. Those findings will not be repeated here. The last meeting between Edelmann and the government was on February 7, 2002. The Eighth Circuit noted on appeal that the "government had clearly stated to Edelmann during the meetings that its investigation was in the preliminary stages." *Edelmann*, 458 F.3d at 804. Edelmann was indicted on July 25, 2002, less than six months later.

Edelmann has not shown "actual and substantial prejudice." She has offered nothing but speculation and her own belief to show an intentional delay of the indictment or that the delay was to gain a tactical advantage. *Cf. United States v. Gladney*, 474 F.3d 1027, 1030-32 (8th Cir. 2007) (rejecting argument that the government's nineteen-month delay in bringing the indictment resulted in a due process violation); *United States v. Haskell*, 468 F.3d 1064, 1070 (8th Cir. 2006) (failure to show that the government intentionally delayed the indictment for ten months after the defendant's name provided to the FBI); *United States v. Vinson*, 414 F.3d 924, 929 (8th Cir. 2005) (no due process violation in indictment that stemmed from a search that occurred more than three years earlier); *United States v. Farmer*, 312 F.3d 933, 936 (8th Cir. 2002) (the government's

---

[5] Documents #52-53.

[6] Document #50.

eighteen-month delay from the discovery of the handgun until the bringing the federal indictment did not result in a due process violation).

<u>Issue 4 – Unlawful Interference in Right to Counsel of Choice and Present Her Defense at Trial, Deliberate Violations of Attorney-Client Privilege and Work Product Doctrine, and Theft of Trial Preparations</u>

Edelmann argues that Vena instituted a criminal investigation of her attorney Alvin Clay as a result of Clay's refusal to withdraw from her case after Vena had threatened him and then successfully had Clay removed as her attorney; that her trial preparations and exhibits were stolen by the government during a search – pursuant to a warrant – of Clay's office; and that Vena and Gardner have repeatedly lied to the Court that they did not have possession of the missing documents which are protected under the attorney-client privilege and the work-product doctrine.

In response, the government states that her claim regarding her choice of counsel is procedurally barred as it was decided on appeal.  It also counters that Edelmann has raised the issue of stolen trial preparations in numerous motions, but she has failed to offer any facts to support her allegations.

Edelmann replies that she has specifically identified the documents she contends were stolen and that this Court's August 7, 2006, opinion in *United States v. Clay*, 4:04CR00274-01 JLH, outlined some of Vena investigative activities, among which, she says is the fact that he secretly initiated the investigation against Clay to interfere with Edelmann's right to a fair trial.

The government has correctly pointed out that the Eighth Circuit rejected her argument that Clay was wrongfully removed as her counsel.  Moreover, the issue of vindictive prosecution was raised when Clay alleged that the indictment against him was brought in retaliation for his defense of Edelmann.  The Court held an evidentiary hearing on that issue.  By opinion and order filed on

August 7, 2006, the Court denied Clay's motion to dismiss on the grounds of vindictive prosecution.

Relevant excerpts from that opinion and order follow:

> Two concerns prompted this Court to hear evidence on the issue of vindictive prosecution. First, Vena initiated the investigation into Clay while he was opposing Clay in the acrimonious proceedings in *Edelmann*. Second, Vena told Brown that "Clay needed to be careful in his representation of Ms. Edelmann." After hearing the evidence, this Court is convinced that a finding of vindictive prosecution in this case is not warranted.

*Clay*, No. 4:04CR00274-01, Order at 13.

> Here, the evidence shows that the timing of the Clay investigation – as well as Vena's participation in the investigation – was a matter of coincidence, not of retaliation.

*Id*. at 14.

> The evidence does not show that the initiation of the investigation against Clay was a result of any personal rancor spilling over from the *Edelmann* proceedings.

*Id*.

> The progress of the Clay investigation from its inception to the search of Clay's offices does not show a retaliatory motive. Hays sent Vena a first draft of his search warrant affidavit in October 2003, but Vena did not respond. Hays again contacted Vena a month later about reviewing his affidavit, but Vena was too busy to review the affidavit. According to Hays, at that point, Govar took Vena off the case and transferred it to Coleman. Hays's search warrant was then approved and Clay's offices were searched in January of 2004. That Vena did not take the time to review the affidavit for the search warrant is wholly inconsistent with Clay's theory that Vena was hell-bent on revenge.

*Id*. at 15.

> The manner in which Vena delivered the statement that "Clay needed to be careful in his representation of Ms. Edelmann" is consistent with Vena's testimony that his statement had to do with Clay's need to be careful with Edelmann rather than a threat that he would prosecute Clay if Clay did not retreat from vigorous representation of Edelmann. Vena had known Brown for more than twenty years and had a friendly relationship with him. Vena chose to convey his message through Brown – rather than confront Clay or bring the issue before the court – because he wanted to deliver his cautionary message in a non-threatening manner. Because Vena's statement,

viewed in context, does not show malice toward Clay or a threat to retaliate against him, it does not prove that the subsequent prosecution of Clay is vindictive.

In response to a direct question by the Court, Vena stated under oath that he did not initiate the investigation of Clay as retaliation for Clay's conduct in the *Edelmann* case. The Court believes Vena. Clay has not shown that Vena should be disbelieved.

*Id.* at 16. Thus, the Court finds no merit to Edelmann's claim that she was wrongfully denied her right to counsel of her choice.

By order filed on November 29, 2006, in the case at bar, the Court addressed Edelmann's motion for production and made findings in the excerpts set out below:

On November 8, 2006, defendant filed a *pro se* motion for production and findings. She asserts that when the government executed a search warrant on her then-attorney Alvin Clay's law office, all of his files were unlawfully seized including files, exhibits, trial preparations and *Brady* material for her case that have never been returned to her or her attorney. She continues that she and her attorney was forced to trial without the benefit of her trial preparations and exhibits.

Defendant states that she intends to file a motion pursuant to 28 U.S.C. § 2255 and needs those items seized by the government to properly prepare the § 2255 motion. She asks the Court to order the government to produce all items related to her that were seized from Clay's office or, in the alternative, make findings as to the whereabouts of her files and order the production of same.

In an exhibit to her motion, defendant highlights from the memorandum in support of Clay's motion to suppress in *United States v. Clay*, 4:04CR00274 JLH, that "[i]t is evident that the search of Alvin clay's [sic] office and the seizure of all of his files was not justified by the information in the possession of the government at the time the search warrant was issued."

* * *

As defendant partially relies on Clay's brief in *Clay*, the Court has reviewed the brief, response and reply filed in that case. It is apparent that the sentence highlighted by defendant is taken out of context as to three issues raised by Clay regarding the search; moreover, the evidentiary hearing on Clay's suppression motion is not supportive of that argument. In addition, the August 7th order by Judge Holmes in *Clay* found, at page 23, that "[t]he warrant affidavit properly defined the scope of the search as Suite 1050 of the Tower Building, and the Government properly searched that specific area. Clay's motion to suppress the evidence seized during the January 16, 2004, search of his offices is denied."

Thus, based on the record developed in *Clay* and here, there is no factual basis to support defendant's motion.

*Edelmann*, No. 4:02CR00128, Order at 1-3.

Edelmann filed subsequent motions to produce on December 12 and on January 12 which were denied by the Court on February 8.  As the Court has previously and repeatedly rejected Edelmann's argument regarding her claim that the government stole her trial preparations and she has really not added anything significant in the current motion, the claims related to the alleged theft are denied.

Issue 6 – Entrapment and Entrapment by Estoppel

Edelmann alleges that the pre-indictment actions of Stripling and Dawkins constituted entrapment as they directed her to engage in conversations about unlawful activities and also entrapment or "official misleading" as she relied on the promises made as a part of the plea bargain which she would not otherwise have done.

The government responds that Edelmann's crimes were committed in the winter and spring of 2001 prior to any contact with the government so it was impossible for entrapment or entrapment by estoppel to have taken place.

In her reply, Edelmann counters that the appellate court did not rule that there was not a cooperation agreement and that Stripling used fabricated evidence that he engineered through her meetings and interviews in which he directed Edelmann to engage.  "Entrapment exists 'where the evidence establishes that the government agent originated the criminal design, the agent implanted in the mind of an innocent person the disposition to commit the offense, and the defendant then committed the criminal act at the urging of the government agent.'"  *United States v. Kendrick*, 423 F.3d 803, 807 (8th Cir. 2005) (citations omitted).

17

The defense of "[e]ntrapment by estoppel applies when an official tells the defendant that certain conduct is legal and the defendant believes the official." Despite its descriptive terminology, the defense of entrapment by estoppel "stems from the due process clause, not from the common law of contract, equity or agency." For example, in *Raley v. Ohio*, 360 U.S. 423, 79 S. Ct. 1257, 3 L. Ed. 2d 1344 (1959), the first Supreme Court case to articulate the entrapment by estoppel defense, four persons were convicted of contempt in state court for refusing to answer questions about Communist or subversive activities posed by a state legislative commission. The defendants had been told by the chairperson of the legislative commission that they could refuse to answer the questions because of the state privilege against self-incrimination. In fact, the chairperson's advice was erroneous. The Supreme Court held their convictions violated the due process clause and reversed.

*United States v. Austin*, 915 F.2d 363, 366 (8th Cir. 1990) (citations omitted).

Edelmann's arguments as to entrapment and entrapment by estoppel are baseless as the crimes charged in the indictment and superseding indictments occurred before Edelmann had contact with the government.

Issue 7 – Denial of Due Process and Refusal to Produce *Brady, Giglio,* and Jencks Material

Edelmann states that she filed four pre-trial motions for *Brady* material and raised the issue again at the June 18, 2004 hearing prior to trial and, while the government promised to provide such material resulting in her motions being declared moot, the government has never produced any *Brady* material. She asserts that, while she and her attorney did inspect the government's file, the exculpatory evidence that she was aware of that was in the file had been removed. Edelmann argues that she must only show that the evidence withheld was material. She complains that certain of the government's exhibits were not produced prior to trial and the letters and documents from John Cottrill were exculpatory and impeaching. She further contends that the government has never produced any *Giglio* evidence even though Richardson, Victor Beard, Eleanor Vaughn, Chris Becker, and Robert Davenport admitted to criminal conduct at trial yet were not charged or left the

jurisdiction because the government obviously entered into agreements not to prosecute them. Edelmann complains that the government did not produce the grand jury testimony of its witnesses, except the prior statement of Beard, and refused to produce statements taken by Patkus.

In its response, the government has provided a chart of the numerous times that Edelmann has raised this issue as well as the Court's rulings. It again asserts that it has provided Edelmann with access to the documents within its possession and the Court has denied her previous motions to produce.

Edelmann replies that the government is misleading in its response. She contends that although the government has always stated that the material would be produced in a timely manner, causing the Court to find the requests moot, the government has still not produced the material. Edelmann argues that the government has withheld exculpatory documents such as a letter from Richardson to Stripling that Cottrill had given falsified documents and Cottrill's documentation concerning Richardson which show her innocence. She also asserts that the government has not produced the criminal and arrest records of their witnesses including three who had prior criminal records for fraud.

> The Due Process Clause of the Fifth Amendment requires the government to disclose to the accused favorable evidence that is material to guilt or punishment and not otherwise available to the defendant. To prove a violation, the defendant must show that the evidence was both favorable and material, and that the government suppressed the evidence. The government has suppressed evidence when it was otherwise unavailable to the defendant, and the prosecution failed to disclose the evidence in time for the defendant to use it. Thus, "[t]he government does not suppress evidence in violation of *Brady* by failing to disclose evidence to which the defendant had access through other channels."

*United States v. Santisteban*, 501 F.3d 873, 877 (8th Cir. 2007) (citations omitted).

> In *Giglio*, the Supreme Court extended this responsibility, requiring disclosure of agreements or understandings between the government and a witness for leniency in

exchange for testimony. These rules are designed to protect a defendant's fundamental right to fairness under the Due Process Clause of the Fifth Amendment, for when the fate of the accused turns on the credibility of a witness, the prosecutor's failure to disclose a potential motive for bias or untruthfulness may result in grave injustice.

*United States v. Rushing*, 388 F.3d 1153, 1158 (8th Cir. 2004) (citation omitted).

The Jencks Act provides, "[N]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of [subpoena], discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). A "statement" under the Jencks Act is a: (1) written statement, made by a witness, signed or adopted by him or her; (2) a stenographic, mechanical, electrical, or other recording or transcript of a witness's oral statement; or (3) a statement by a witness before a grand jury.

In order for there to be a Jencks Act issue, the non-disclosed statements must be substantially different than those given to the defense. A conviction can only be overturned under the Jencks Act if there was bad faith by the government and prejudice to the defendant.

There was no Jencks Act violation in this case because all written statements were given to the defense. Vieth offers no evidence, just speculation, that any Jencks Act report was not disclosed to the defendant. Therefore, there cannot be a Jencks Act violation.

*United States v. Vieth*, 397 F.3d 615, 619 (8th Cir. 2005) (citations omitted).

The Court, once again, does not find Edelmann's assertions that the government failed to comply with its obligations under *Brady*, *Giglio*, or the Jencks Act to have merit. The Court cannot find that the government suppressed evidence that was favorable even as to credibility, was material, and was unknown to Edelmann or were written statements under the Jencks Act.

Issue 8 - Refusal to Produce Original Documents for Inspection, Copying and Analysis, and at Trial

Edelmann contends that she moved to prohibit the use of copies at trial as she denied authenticity, but the government produced copies which were fabrications and prevented her from

20

performing her own inspection and analysis.  She states that she objected at trial to the presentation of copies from the originals which were available, but the Court overruled her objections.  Edelmann then lists the exhibits which she contends were forged or fabricated.

The government responds that a large majority of the documents were in fact originals and a majority were received without objection.  It counters that when there was an objection, the Court permitted counsel to conduct *voir dire* and after the appropriate foundation was laid through the witness as to the knowledge of the document and its reliability, it was properly admitted.

Edelmann, in her reply, reasserts her claims and argues that there were numerous documents in which the witnesses testified that they were never requested to provide or bring the original document.

The Court agrees with the government that the documents admitted complied with Federal Rules of Evidence 901(a) and 1003 as illustrated by the first example raised by Edelmann as found at pages 52-56 of the trial transcript.[7]

<u>Issue 9 – Invalid Superseding Indictments, Denial of Fifth Amendment Right and Lack of Jurisdiction to Proceed on Indictment Not Found by Grand Jury</u>

Edelmann contends that the government attorneys made substantive changes to the first and second superseding indictment that were not presented to the original grand jury.

The government responds that the Court previously addressed Edelmann's motion to dismiss the second superseding indictment as defective and found that dismissal was not warranted.  It continues that Edelmann speculates as to what was presented to the grand jury without any evidence in support.

In her reply, Edelmann argues that the government lied when it told her attorney that only

---

[7] Document #255, Vol. 1.

name and spelling corrections had been made rather than substantive changes.

A review of the indictments reflected that each was signed by the foreman; indeed, the first and second superseding indictments were signed by the same foreman. Edelmann has presented absolutely no evidence to support her contention that the government changed the indictments without presentation and the return of a true bill by the grand jury.

Issue 10 – Elements of Offenses Not Alleged in the Indictment and Constructive
Amendment of the Indictment

Edelmann argues that the indictment did not properly allege all the elements of mail fraud, wire fraud, and money laundering to the grand jury, although the Court included those elements in the jury instructions; the government misled the jury in closing argument as to what the elements are; and the instructions were confusing to the jury. She also contends that the government's failure to provide her with the name of the person Richardson referenced in Count III was in violation of the presentation clause and confrontation clause of the Fifth Amendment. Edelmann further asserts that the forfeiture instructions constructively amended the indictment and the jury instructions were improper.

The government combined its response with Issue 9 and states that similar claims that the second superseding indictment was defective were made by Edelmann in a motion to dismiss which the Court denied. The government excerpts nine paragraphs from that order.[8]

Edelmann replies that the indictment fails to state a criminal offense and she had planned to present a good faith defense at trial. She states that the government failed to address her claims as to constructive amendment or violations of the presentation and confrontation clauses.

As pointed out by the government, the Court has already found the second superseding

---

[8] Document #122.

indictment contained the necessary elements of the statutes charged.  Moreover, the appellate court

found the evidence presented at trial was sufficient to support the elements for each of the five

counts.  There is no merit to Edelmann's claims on this issue.

        Issue 11 – Denial of Sixth Amendment Right to Conflict Free Counsel

        Edelmann again alleges that Vena threatened Clay, vindictively instituted charges against

Clay, and committed theft from Clay's office during the search.  She asserts that Brown had a

conflict of interest because he continued to represent her as well as Clay during his criminal

investigation and would not call him as witness at trial to testify about the theft of trial preparations

from Clay's office; that Brown received proceeds of the wire fraud in *United States v. Edelmann*,

4:04CR00228; that Brown demanded an additional $50,000 fee which she was unable to pay; that

she was unsuccessful in moving prior to trial to proceed *pro se* and Brown was unsuccessful in being

permitted to withdraw; and that the government did not ask that Clay be removed in the case of

*United States v. Flannery.*[9]

        The government responds that Edelmann's argument essentially raises the same issue as

asserted in Issue 4 and the issue of right to counsel was decided in favor of the government on

appeal.

        In her reply, Edelmann argues that when she raised the conflict issue the Court made no

findings and appellate counsel failed to raise the issue.  She continues that Brown labored under an

actual conflict of interest due to his representation of Clay and his friendship with Vena.  Edelmann,

in her October 16 supplement, states that she recently learned that when Brown was demanding

$50,000 from her, he was being investigated by the Office of Professional Conduct with stealing

---

[9] No. 4:02CR00132-01.

money from other clients which ultimately resulted in his disbarment in March of 2007.

Regarding the last argument, the docket sheet in that case reflects that Flannery pled guilty on May 28, 2003, and was sentenced on September 10, 2003.  As found on page 5 of the August 7, 2004 order in *Clay*, a case was not even opened against Clay by the United States Attorney's office until July 3, 2003.  Moreover, it was not until January of 2004 that Clay's office was searched and the government filed the motion for Rule 44 hearing on February 25, 2004, in the case at bar.

The Court has already discussed the alleged Vena threats against Clay, Clay's prosecution, and the "stolen" materials from Clay's office.  The Court also addressed Edelmann's motion to proceed *pro se* and Brown's oral motion to withdraw motion at trial, which dealt with such issues as the conflict due to the representation with Clay and fees.[10]  In addition, there is absolutely nothing in the record of 4:04CR00228 to support Edelmann's assertion that Brown received the proceeds of the wire fraud.

<u>Issues 12-18 – Presentation of False and Fabricated Testimony by the Government</u>

Edelmann asserts that the government knowingly presented fabricated evidence and false testimony during her trial.  She points to differences in the testimony of Vaughn, Beard, Dawkins, Davenport, Diane Cathey, Richardson, Larry Landow, and Nancy Hollis and argues that certain documents were fabricated.  Edelmann accuses the government of making misrepresentations to the Eighth Circuit on which that court relied upon in affirming the conviction.  She also challenges the Rule 404(b) evidence that was introduced, such as the false testimony of Chris Becker.

The government responds that all Edelmann has presented are inconsistencies and her disbelief in the veracity of statements that were made.  It further responds that it is highly unlikely

---

[10] Documents #135, #136, #138 (all under seal); Document #255, Vol. 1, pages 26-27.

that these inconsistencies could have affected the outcome of the trial.

In her reply, Edelmann states that the government is once again attempting to manipulate the

Court regarding what the trial transcript reflects.

> The prosecution may not use or solicit false evidence, or allow it to go uncorrected.
> To prove prosecutorial use of false testimony, Martin must show that: (1) the
> prosecution used perjured testimony; (2) the prosecution knew or should have known
> of the perjury; and (3) there is a "reasonable likelihood" that the perjured testimony
> could have affected the jury's judgment. "Mere inconsistency" between witnesses'
> testimony is not necessarily perjury, and not every contradiction is material. "[A]
> challenge to evidence through another witness or prior inconsistent statements [is]
> insufficient to establish prosecutorial use of false testimony."

*United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995) (citations omitted); *see also United States*

*v. Myers*, 503 F.3d 676, 682 (8th Cir. 2007); *United States v. Bass*, 478 F.3d 948, 950-951 (8th Cir.

2007).

The Court is persuaded that Edelmann has failed to meet any of the prongs to show

prosecutorial use of false testimony or evidence.  There is simply nothing to support Edelmann's

belief that the government knew of any perjury.  Moreover, despite Edelmann's opinion that the

appellate court was misled, the Eighth Circuit's decision still control.

Issue 19- Insufficient Evidence to Support Convictions

This argument was rejected on appeal and so cannot be relitigated in a § 2255 motion.

Issue 20 – Willful Misconduct in Closing Arguments

 Edelmann contends that Gardner made numerous misrepresentations in the closing

argument, expressing her opinion and improperly testifying as well as making deliberate

misstatements of law.  The government responds that it did not mischaracterize the evidence or state

as fact evidence that was not in the record.  In reply, Edelmann reasserts that she has pointed out

numerous lies advanced during the trial and in closing argument.  For the same reasons that the Court

could not find the testimony identified by Edelmann in Issues 12-18 false, her argument also fails as to the arguments made by the government that were based on such testimony.

Issue 21 –  Improper and Defective Jury Instructions

Edelmann argues that the instructions for Count III were defective in leading the jury to believe that finding that "something" was wired in interstate commerce was sufficient for a conviction and Count V did not advise the jury of the elements of the offense.  She asserts that the government created the erroneous instructions.

The government has responded that the guilt phase instructions given were the Eighth Circuit Model Jury Instructions with minor modifications to include the charging language of the second superseding indictment and that, while her counsel did make objections, they were overruled by the Court.

Edelmann replies that the "minor modifications" were made because the government had not proven its case.  She continues that her counsel objected only to the instruction relating to the § 1957 offense.

Edelmann is correct that her counsel objected to Instruction No. 10, and the Court overruled the objection.[11]  However, there was no error in the instructions which tracked and were modeled on the Eighth Circuit Model Jury Instructions.

> The district court has wide discretion in crafting jury instructions. We will affirm if the instructions, taken as a whole, fairly and adequately instruct the jurors on the law applicable to the case.  The instructions "do not need to be technically perfect or even a model of clarity."

*United States v. Jennings*, 487 F.3d 564, 580 (8th Cir. 2007) (citations omitted).

Issue 22 –  Ineffective Assistance of Counsel in Failing to Poll Jurors

---

[11] Document #255, Vol. 5, pages 775-78.

Edelmann argues that her attorney failed to poll the jurors as she requested and that there was improper contact, with additional information and instructions during deliberations, which polling would have eliminated.

In response, the government counters that there is no indication that the verdict was not unanimous and Edelmann has only speculated that polling would have made a difference.

Edelmann replies that the forfeiture instructions were submitted to the jury during their deliberations, which she says was improper contact.

> The only evidence supporting Leanos-Marquez's argument is the missing signature, but without more he has not demonstrated a lack of unanimity sufficient to overcome the district court's finding. He cannot, moreover, successfully argue that he received ineffective assistance of counsel because he has not shown he was prejudiced by counsel's failure to poll the jury.

*United States v. Leanos-Marquez*, 206 F. App'x 647, 650 (8th Cir. 2006).

Edelmann has shown no prejudice even if her counsel did fail to heed her request that the jury be polled. To Edelmann's assertion that there was improper contact with the jury regarding the submission of the forfeiture instructions, the transcript clearly shows that the jury was instructed concerning the forfeiture allegations in open court.[12]

<u>Issue 23 – Not Providing Aiding and Abetting Instruction</u>

Edelmann alleges that, even though she was charged with aiding and abetting, the elements were not alleged in the second superseding indictment and the jury was not instructed on that offense. The government responds that a reference of 18 U.S.C. § 2(b) was added to each of the five counts as merely dealing with the issue of causation which was covered in the instructions for the substantive counts. In reply, Edelmann contends that she had a constitutional right to have the jury

---

[12] Document #255, Vol. 6, pages 866-77.

instructed on the aiding and abetting offense.  The Court agrees that there was no error and the jury was properly instructed.

Issues 24-28 – Prosecutorial Misconduct and Misuse of Forfeiture Statutes

Edelmann contends that the criminal forfeiture statutes at the time did not cover mail/wire fraud cases unless financial institutions were involved and the USA Patriot Act's amendments are not retroactive.  She further argues that the government made misrepresentations to the jury, the jury instructions were improper as forfeiture of property was not authorized for mail/wire fraud, and the forfeiture allegations were not submitted prior to deliberations and did not require a finding beyond a reasonable doubt.

In response, the government argues that while mail and wire fraud are not specifically listed as offenses that would permit forfeiture under 18 U.S.C. § 981(a)(1)(c), the provision does reference any activity offense constituting "specified unlawful activity" under 18 U.S.C. § 1956(c)(7), which in turn references 18 U.S.C. § 1961(1), in which both mail and wire fraud appear as specified unlawful activities.  It continues that the jury was instructed pursuant to the Eighth Circuit pattern forfeiture instructions which provide for a preponderance of evidence standard.

The Eighth Circuit recently decided the case of *United States v. Jennings*, 487 F.3d 564 (8th Cir. 2007), which rejected a similar argument that forfeiture was not authorized for mail fraud counts as illustrated by the quoted passages below:

> Jennings next argues that the district court erred in ordering Jennings to forfeit the scheme proceeds that benefitted him personally.  The superseding indictment included forfeiture allegations.  It called for the forfeiture of Jennings's proceeds from the mail fraud counts, based on 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and the money laundering count, based on 18 U.S.C. § 982(a)(1).  "[S]atisfied that forfeiture [was] appropriate here," the district court ordered Jennings to forfeit $284,398, specifically acknowledging that the total included proceeds from the mail fraud counts as well as the money laundering count.

Jennings first contends that the forfeiture statutes only authorize forfeiture of the money laundering proceeds, not the mail fraud proceeds.  Next, Jennings claims that even if the forfeiture statutes include the mail fraud proceeds, ex post facto considerations preclude the inclusion of some of the funds ordered forfeited.  Finally, Jennings argues that the government's attempt to forfeit substitute assets is barred by the one-year statute of limitations governing forfeiture actions.  As Jennings's forfeiture arguments are questions of law, we review each de novo.

1.  Authorized by Law

Jennings first argues that 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) do not authorize the forfeiture of proceeds from the mail fraud counts.  Jennings contends forfeiture is not available on anything but the money laundering count, making any amount over $25,000 not supported by the law.

Prior to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. 106-185, § 16, 114 Stat. 202, 221, criminal forfeiture was set forth only in 18 U.S.C. § 982. Section 982 included authority for criminal forfeiture in mail fraud cases only in instances in which the mail fraud affected a financial institution.  18 U.S.C. § 982(a)(2)(A) (1994).  After the amendment, 28 U.S.C. § 2461(c), which became effective on August 23, 2000, read:

> If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the Government may include the forfeiture in the indictment or information in accordance with the Federal Rules of Criminal Procedure, and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in section 413 of the Controlled Substances Act (21 U.S.C. § 853), other than subsection (d) of that section.

28 U.S.C. 2461(c) (2000).

Criminal forfeiture for mail fraud proceeds "is specifically authorized when special circumstances are present, such as when the mail fraud affects a financial institution." Jennings's mail fraud did not involve a financial institution; therefore, the government "seeks criminal forfeiture for [the defendant's] mail fraud proceeds under 28 U.S.C. § 2461(c) through the civil forfeiture provision, 18 U.S.C. § 981(a)(1)(C), which does not require any special circumstances as a prerequisite to forfeiture for mail fraud crimes."  Jennings argues that 28 U.S.C. 2461(c) does not authorize such a forfeiture because 18 U.S.C. § 982(a)(2)(A) provides for criminal forfeiture only in specific circumstances of mail fraud and no such circumstances are present here.

Several circuits have recently analyzed this statutory scheme and have come to the conclusion that Congress intended § 2461(c) to apply in this situation.

Section 981(a)(1)(C) permits the government to seek civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of ... any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)." 18 U.S.C. § 981(a)(1)(C). Section 1956(c)(7)(A) includes mail fraud within the definition of "specified unlawful activity." When it enacted § 2461(c), Congress "made clear . . . that it hoped to encourage the use of criminal forfeiture procedures . . . 'whenever any form of forfeiture is otherwise authorized by statute.'" Considering the language of § 2461(c), the legislative history surrounding the 2000 amendment, and Congress's 2006 amendment to the statute, which "resolves doubts for the future in the government's favor," we join these other circuits in holding that § 2461(c) allows for criminal forfeiture of the proceeds of general mail fraud.

*Id.* at 583-85 (citations and footnotes omitted); *see also United States v. Smairat*, 2006 WL 1554412, *6-10 (N.D. Ill. 2006).

In addition, in *United States v. Huber*, 462 F.3d 945 (8th Cir. 2006), the court rejected the argument that the forfeiture verdicts had to be decided beyond a reasonable doubt:

We also reject Huber's argument that he was entitled to have the forfeiture amount decided by the jury beyond a reasonable doubt, citing both *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."), and *Booker*. At trial, the court instructed the jury to find the forfeiture amount by a preponderance of the evidence, and the jury decided that amount would be approximately $5.9 million. Criminal forfeiture is an indeterminate sentencing scheme and accordingly, Huber was not entitled to a reasonable doubt forfeiture instruction under the *Apprendi* line of reasoning. In *United States v. Hively*, 437 F.3d 752, 763 (8th Cir. 2006), we found that criminal forfeiture proceedings were unaffected by *Booker*, noting that the *Booker* Court expressly found that the forfeiture provision of the sentencing statute, 18 U.S.C. § 3554, was still "perfectly valid."

*Id.* at 949 (citation omitted).

Issue 29 – Improper Preliminary and Final Orders of Forfeiture

Edelmann again complains that the forfeiture verdicts were not beyond a reasonable doubt;

that the total amount that the jury found to be forfeitable is less than the amount in the preliminary forfeiture order before the government filed a motion for the final order to convince the Court of the requisite nexus to permit the total of $425,000.00; that Fed. R. Crim. P. Rule 32.2 was violated as the forfeiture was not included in the judgment; that she was entitled to object as Richardson had no interest in her home; and that no amended judgment was filed.

The government responds that its appellate brief addressed the issue of forfeiture, which was decided in favor of the government on appeal and is now moot.

In reply, Edelmann insists that the only issue decided by the appellate court was that it was proper to amend the judgment under Fed. R. Crim. P. Rule 36. She argues that the preliminary order of forfeiture was erroneous and the government sought to circumvent to provisions of Rule 32.2.

As the government has noted, the issue of the preliminary and final order of forfeiture and the amended judgment were addressed on appeal. Moreover, the order filed in September 15, 2005, was an appropriate amended judgment.[13]

### Issue 30 – Forfeiture of Property and Money Judgment Violated Double Jeopardy and Excessive Fines Clauses

The arguments raised by Edelmann have already been addressed in Issues 5 and 29.

### Issue 31 – Improper and Unconstitutional Sentence

Edelmann asserts that the maximum sentence for mail and wire fraud at the time of the offenses was five years, although they were increased in 2002 to twenty years, whereas she was sentenced to 92 months – due to enhancements – which was more than five years. She continues that although the government will argue that money laundering is a ten- year sentence, she was not charged with a specified unlawful activity under § 1957. Edelmann also argues that she received

---

[13] Document #263.

improper sentencing enhancements under § 2F1.1 because of the false testimony of Richardson and the government's arguments; under § 3C1.1 for obstruction of justice as Judge Wilson did not direct her to turn herself into the United States Marshal by noon on November 10, 2004, and the arrest warrant was based on lies regarding the plea agreement in 4:04CR00228.

The government counters that the calculation of Edelmann's offense level and the reasonableness of her sentence was decided in favor of the government on appeal.

Edelmann replies that the improper sentencing enhancements were based on lies and exceeded the statutory maximum.

The Court agrees with the government that the Eighth Circuit has already ruled on issues related to her sentence.

Issue 32 – Improper Restitution Order

Edelmann continues to dispute the amount of the restitution order as $425,000.00 and argues that Richardson's testimony and documents, including those submitted in the  March 3, 2006 sealed accounting, were false as to the amount.  The government responds that the amount of restitution to Richardson was the $209,000.00 ordered; Richardson presented a detailed accounting at sentencing; and Edelmann's allegations regarding the false testimony and documentation are unsubstantiated and untrue.  In her reply, Edelmann complains that she has repeatedly sought the original documents and receipts and that Richardson was not the purported victim in this case and was not entitled to obtain anything of value from her.  The Court finds that the government is correct regarding the restitution amount and the evidence which supported the findings in that amount.

Issue 33 – Unconstitutional Delay in Sentencing

Edelmann complains that she was not sentenced until thirteen months after she was

32

convicted, during which time she was kept in inhumane conditions; the delay resulted in her not being able to call witnesses or locate certain evidence; and she was also prejudiced as she would have been sentenced pre-*Booker*.

The government responds by providing a chronology of the events following her conviction found at pages 46-48 of its June 1, 2007 response.  Document #321.  It argues that Edelmann was the cause for delay in sentencing and the issue of her flight in November of 2004, which resulted in the obstruction of justice enhancement, was affirmed on appeal.

In reply, Edelmann counters that she was not the cause of the delay and that she objected to the continuances.  While she does not dispute that she did not turn herself in as directed by her attorney and the government, she asserts that she found there was no order directing her to turn herself in to the Marshal, and so she did not comply with counsel's demands.

Fed. R. Crim. P. Rule 32(b) Time of Sentencing provides:

(1)  In General. The court must impose sentence without unnecessary delay.

(2)  Changing Time Limits.  The court may, for good cause, change any time limits prescribed in this rule.

In addition, the case of *United States v. Arbour*, 335 F. Supp. 2d 152 (D. Me. 2004), addressed the issue of delay in sentencing as follows:

> Neither the Supreme Court nor the First Circuit has held the Sixth Amendment right to a speedy trial reaches sentencing, but in *Pollard v. United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957), the Supreme Court assumed it did. ("We will assume arguendo that sentence is part of the trial for purposes of the Sixth Amendment.")  In *Pollard*, the Court explained that "whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances."  In any event, "the delay must not be purposeful or oppressive."

> Similarly, the First Circuit assumed for purposes of the *Nelson-Rodriguez* appeal that "the right to speedy trial extends to sentencing."  Mr. Arbour correctly notes the First

Circuit pointed out that Fed. R. Crim. P. 32(b) requires the court to sentence a defendant "without unnecessary delay."  Following the lead of *Pollard* and *Nelson-Rodriguez*, this Court assumes the right to speedy trial extends to the sentencing phase of Mr. Arbour's case.

In *Nelson-Rodriguez*, the First Circuit referred to *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which set forth four factors to determine whether the right to a speedy trial has been violated: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and, 4) prejudice to the defendant.  This Court will, therefore, apply the four-factor *Barker* analysis to the instant case.

* * *

Finally, the Defendant has not shown he has suffered substantial and demonstrable prejudice as a result of the eleven-month delay.  As described below, Mr. Arbour's main claim of prejudice results from his serving a portion of his upcoming federal sentence in county jail.  Although there may be significant prejudice from a delay between indictment and trial, "[m]ost of those interests diminish or disappear altogether once there has been a conviction."  Thus, the *Nelson-Rodriguez* Court noted there is a "great reluctance to find a speedy trial deprivation where there is no substantial and demonstrable prejudice."  There is insufficient evidence in this case to meet this high prejudice requirement.

*Id.* at 154-55 (citations omitted).

The government has accurately laid out the post-conviction timeline demonstrating that Edelmann was the primary reason for the delay in sentencing.  After the initial sentencing date was set for September 21, 2004, the sentencing was continued only once, for a month, on the government's motion due to a conflict.  On the other hand, the sentencing was continued five times on motions by Edelmann.  The sentencing was continued once as a result of her guilty plea in 4:04CR00228 for a consolidated sentencing.  Moreover, one of Edelmann's motions was the result of her failing to surrender herself to the Marshal as directed by the Court[14] and  the subsequent

---

[14] *Edelmann*, 458 F.3d at 817.  In addition, the Court found that Edelmann violated a plea agreement when she failed to surrender to the Marshal on November 10, 2004, and also disobeyed a court order.  *United States v. Edelmann*, No. 4:04CR00277 JLH (E.D. Ark. July 25, 2005) (order dismissing superseding indictment).

request – which was granted – for a medical psychiatric examination. Although Edelmann now states that she objected to the delays in her sentencing, her attorneys appear to have made those requests in good faith, partly to determine if she was competent to assist in her sentencing. Finally, the Court is persuaded that Edelmann was not prejudiced since she has failed to identify which witnesses and evidence were unavailable.

Issue 34 – Misconduct Before the Eighth Circuit by False Statements in Brief

Edelmann once again contends that the government's presentation of events was misrepresentations and lies. The government responds that Edelmann's allegations are false and completely unsubstantiated. In reply, Edelmann contends that she has pointed out numerous misrepresentations. Edelmann's argument fails. The jury made proper credibility findings and the record was properly presented and argued to the appellate court.

Issue 35 – Miscellaneous Ineffective Assistance of Counsel Issues

Edelmann contends that counsel should have subpoenaed Pike for the suppression hearing; failed to point out that her business property was seized as part of plea bargain; failed to file a motion to dismiss prior to and during trial based on double jeopardy by the seizure of the property; failed to argue entrapment; failed to object to a motion for final judgment regarding forfeiture; failed to object to the amount of restitution; failed to format her research and authorities into a specific pleading; and failed to raise all the other issues that she asserts in this motion.

The government, in response, counters that her claims are without merit.

In reply, Edelmann claims that her attorney's ineffectiveness is presumed by their conflicts and due to the prosecutorial misconduct.

"The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can

show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense."

Both parts of the *Strickland* test must be met in order for an ineffective assistance of counsel claim to succeed. The first part requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Review of counsel's performance by the court is "highly deferential," and we presume "counsel's conduct falls within the wide range of reasonable professional assistance." The court does not "second-guess" trial strategy or rely on the benefit of hindsight, and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective. The second part of the *Strickland* test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." As the district court noted, in this instance we add Clara's proffered testimony to the evidence that was before the jury in the second trial, and then "gauge the likely outcome of a trial based on this total body of evidence." In doing this analysis, the court should be "mindful of (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution."

*Williams v. United States*, 452 F.3d 1009, 1012-13 (8th Cir. 2006) (citations omitted).

In *Bear Stops v. United States*, 204 F. Supp. 2d 1209 (D. S.D. 2002), the following summary

is found:

The proper standard for evaluating petitioner's claim that appellate counsel was ineffective in neglecting to appeal the foregoing evidentiary issues "is that enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." [Petitioner] must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal–that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Id*. at 1221-22 (citations omitted).

As the Court has not found merit to any of Edelmann's grounds, the Court simply cannot find that any of her counsel's performances were deficient, much less that any such deficient performance prejudiced her defense.  The numerous pre-trial motions; the motions and objections made throughout the trial; the vigorous cross-examinations of witnesses; and the arguments at sentencing and on appeal demonstrate that Edelmann did not receive ineffective counsel.  Edelmann chose to testify and present her many arguments – again made here –  that the government's case was just lies and fabrications.  However, based on the evidence, the jury found her to not be credible and returned the guilty verdicts.

Issue 36 – Prosecutorial Misconduct Rendered Her Counsel Ineffective at All Stages

Edelmann repeats that the government engaged in improper and unlawful activities before the trial and appellate courts and the jury.  She asserts that when her attorneys attempted to bring these acts to the Court's attention, the government made up more lies.  The government again states that her accusations are without merit.  Edelmann replies that the government rendered her attorney ineffective in stealing her trial preparations and exhibits and the cumulative effect of the government's activities require reversal of her convictions and dismissal of the indictment.  The Court has already addressed the substantive issues on which the alleged misconduct is based in this order.

Issue 37 – Denial of Due Process by Misrepresentations in Presentence Report

Edelmann contends that the presentence report was biased and reflected some of the same lies advanced to the Court and the jury.  She also complains that it was improper for information from her prior 1988 sealed report to be used in the report in this case.

The government responds that her contentions are reminiscent of her cross-examination

testimony that everyone who testified was lying and that she alone was telling the truth.

In reply, Edelmann states that she provided her counsel with a list of the incorrect information in the report, but her assertions were disregarded by her attorney as well as the Court.

The Court notes that Edelmann's reply does admit that her assertions at sentencing were disregarded by the Court. Indeed, her counsel did raise numerous objections although they were unsuccessful. The report was prepared based on the facts determined by the jury's verdicts so the Court cannot find that there were misrepresentations in the report.

Issue 38 – Vindictive, Retaliatory and Selective Prosecution

Edelmann argues that the investigation was initiated due to her legal services and another count was added to the indictment when she failed to plead guilty. The government counters that Edelmann has the burden of establishing vindictiveness in the sense of bad faith or maliciousness and she has failed to present any evidence here. In reply, Edelmann states that her trial counsel raised the issue of prosecutorial misconduct and improprieties, but the Court denied his motion.

In *Clay*, the Court set out the legal standard for vindictive prosecution in the August 7, 2006 order at page 13 as follows:

> A defendant may prove a vindictive or improper motive either by direct of circumstantial evidence. A defendant may prove through objective evidence that the prosecutor's decision was intended to punish him for the exercise of a legal right. *United States v. Beede*, 974 F.2d 948, 951 (8th Cir. 1992). A defendant may also prove vindictiveness using circumstantial evidence; in certain cases, vindictiveness will be presumed from the circumstances if a reasonable likelihood of vindictiveness exists. *United States v. Goodwin*, 457 U.S. 368, 373, 102 S. Ct. 2485, 2488, 73 L. Ed. 2d 74 (1982); *United States v. Rodgers*, 18 F.3d 1425, 1429 (8th Cir. 1994). If the defendant provides sufficient evidence to take the question of vindictive prosecution past the frivolous state and raise reasonable doubt as to the prosecutor's purpose, the Court may hold an evidentiary hearing on the issue. *United States v. Kelley*, 152 F.3d 881, 885 (8th Cir. 1998).

*Clay*, No. 4:04CR00274-01, Order at 13.

The Court simply cannot find that Edelmann has met her burden as her only support being her own beliefs.

Issue 39 – Actual Improprieties and Appearance Thereof

Edelmann argues that throughout her brief she has pointed to the endless unlawful and manipulative actions by the government and that the Court should exercise its supervisory authority of the activities of the federal prosecutors by reversing the convictions and dismissing the case.

In response, the government states that allegations of prosecutorial and government misconduct have already been addressed throughout the response and has failed to support any allegations with independent evidence or facts in the record.

Edelmann replies that her trial counsel raised the issue of prosecutorial misconduct and improprieties although the Court denied his motion.

The Court agrees with the government that this issue has already been addressed and found to be without merit.

Finally, the Court notes that, although the thirty-nine issues were addressed unless barred by being decided on appeal, the government's assertions of procedural default are also applicable. "'Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) (citation omitted).

As the Court has resolved all the issues presented in the § 2255 motion, the Court finds that Edelmann is not entitled to any of the information she seeks in discovery.

**CONCLUSION**

In sum, the Court finds no merit to the grounds raised in her § 2255 motion and that further discovery is not warranted.

Accordingly, Edelmann's April 4 motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct sentence is hereby DENIED.  Document #311.  Edelmann's April 11 motion for discovery as supplemented on May 22 is also DENIED.  Documents #313, #319.

IT IS SO ORDERED this 6th day of December, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE